UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA QUISPE, | No. 1:25-cv-2002 CSK |
| Petitioner, | |
| v. | ORDER |
| MOISES BECERRA, et al., | |
| Respondents. | |

**I. INTRODUCTION**

      Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging her detention.[1] Petitioner, a citizen of Venezuela, was admitted to the United States on July 13, 2001 as a Visitor for Pleasure under a Visa Waiver Program (VWP) for a temporary period not to exceed October 12, 2001. Petitioner remained in the United States beyond this date without authorization. Petitioner was initially detained by U.S. Immigration and Customs Enforcement (ICE) officials on September 14, 2025 after ICE officials lodged an Immigration Detainer against petitioner. On October 3, 2025, petitioner was found removable from the United States and was issued a Notice of Intent to Issue a Final Administrative Order of Removal. Petitioner is currently detained at the California City ICE Processing Center.

---

[1] Petitioner is represented by counsel and paid the filing fee. The parties consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (ECF No. 11.)

1

Pending before the Court is petitioner's motion for a temporary restraining order seeking petitioner's immediate release, and other relief.  (ECF No. 2.)

## II.  PROCEDURAL BACKGROUND

On December 25, 2025, petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging petitioner's detention and seeking, as relevant here, an order granting the petition for writ of habeas corpus and directing respondents to immediately disclose petitioner's location and custodial status, enjoining ICE from removing or transferring petitioner, ordering petitioner's immediate release, ordering that respondents have no further contact with petitioner without counsel present, and the preservation of evidence and expedited discovery. (ECF No. 1 at 6.)  Petitioner simultaneously filed a motion for temporary restraining order seeking the relief sought in the petition.  (ECF No. 2 at 4.)

On December 25, 2025, the district court issued a briefing schedule on the motion for temporary restraining order.  (ECF No. 5).  The district court ordered that respondents shall not take any action to remove petitioner from the United States.  (Id.) On December 29, 2025, pursuant to a stipulation by the parties, the district court modified the briefing schedule to extend the deadline for respondents' opposition to December 30, 2025 at 5:00 p.m.  (ECF No. 10.)  Petitioner's optional reply was ordered to be filed by December 31, 2025.  (ECF No. 5.)

The parties consented to the jurisdiction of a United States Magistrate Judge, and on December 30, 2025, this case was reassigned to the undersigned.  (ECF No. 11.)  That same day, this Court ordered that the district judge's briefing schedule remain in place; ordered respondents to include with their opposition all portions of petitioner's A-File and other supporting documents referenced in or related to respondents' opposition, including copies of all orders of release, documents related to any relevant violations of release, and all detention orders; and ordered the parties to inform the Court whether they were amenable to converting the motion for a temporary restraining order into a preliminary injunction.  (ECF No. 12.)

On December 30, 2025, respondents filed an opposition, including all their arguments in opposition to both a motion for temporary restraining order and a motion for preliminary injunction and confirming they do not oppose conversion to a motion for preliminary injunction.

(ECF No. 13 at 6.)

On December 31, 2025, petitioner filed her reply, but did not address whether she was amenable to converting the motion for temporary restraining order to a motion for preliminary injunction. As a result, the motion for temporary restraining order is not converted to a motion for preliminary injunction.

The motion for temporary restraining order is submitted for decision on the record and written briefing.

### III. FACTUAL BACKGROUND

Petitioner is a citizen and national of Argentina. (ECF No. 13-1 at 2; ECF No. 13-2 at 1.) Petitioner was admitted to the United States on July 13, 2001 as a Visitor for Pleasure under a Visa Waiver Program with authorization to remain in the United States for a temporary period not to exceed October 12, 2001. (ECF No. 13-1 at 2; ECF No. 13-2 at 2.) Petitioner remained in the United States beyond this date without authorization. (ECF No. 13-1 at 2; ECF No. 13-2 at 2-3.)

On August 31, 2025, petitioner "called law enforcement to report domestic violence committed against" petitioner by her husband, and her husband was arrested. 12/31/2025 Petr. Decl. ¶ 7 (ECF No. 14 at 9); Visa Waiver Program (VWP) Notice of Intent to Issue a Final Administrative Order of Removal (ECF No. 13-3 at 3 (contesting allegations and charges in VWP Notice of Intent where "my husband abuse me (my husband was arrested 8/31/25)"). On September 14, 2025, petitioner was arrested by the Broward County, Florida Sheriff's Office for the offense of Battery/Domestic Violence. (ECF No. 13-1 at 2; ECF No. 13-2 at 2.) In her sworn declaration, petitioner states that she was arrested after her sister-in-law made a false report of domestic violence against petitioner, charges based on this report against petitioner were subsequently dropped, this arrest was petitioner's only arrest while she has lived in the United States over 25 years, and that petitioner has no criminal convictions. 12/31/2025 Petr. Decl. ¶¶ 8-9.

After ICE issued a detainer request, petitioner was taken into ICE custody. Patrick J. Cruz Decl. ¶ 5 (ECF No. 13-1 at 2; ECF No. 13-2 at 2.) It is unclear from the records submitted when petitioner was taken into ICE custody.

3

A Visa Waiver Program (VWP) Notice of Intent to Issue a Final Administrative Order of Removal (VWP Notice of Intent) was issued on October 3, 2025.[2] (ECF No. 13-3 at 1)  In the VWP Notice of Intent, it appears that petitioner contested the allegations in the notice and also requested asylum, withholding or deferral of removal to Argentina, and protection under the Convention Against Torture.[3] (ECF No. 13-3 at 3.)

Petitioner was later transferred to the Florence Staging facility for removal staging.  Cruz Decl. ¶ 7; see Petr. Decl. ¶ 29 (petitioner was taken to an airport in Arizona).  It is unclear from the records submitted when petitioner was transferred to the Florence Staging facility.  After petitioner filed a request for a temporary restraining order, ICE transferred petitioner back to the California City ICE Processing Center, where she currently remains detained.  Cruz Decl. ¶ 7; see Petr. Decl. ¶ 32.

As of December 30, 2025, "ICE intends on filing an I-863, Notice of Referral to Executive Office for Immigration Review ("EOIR") for asylum only proceedings and is in the process of filing said notice with EOIR."  Cruz Decl. ¶ 8.  It is unclear from the records submitted whether Petitioner has any other immigration-related applications for relief.[4]

## IV.  LEGAL STANDARDS

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter v. Natural Res. Def. Council, Inc.,

---

[2] Respondents also submitted a "VWP Notice to Alien Ordered Removed/Departure Verification" form with their opposition.  (ECF No. 13-3 at 1.)  This form is dated October 3, 2025 like the VWP Notice of Intent, but was not provided to the petitioner until December 23, 2025 based on the signed and dated certificate of service on this form.  (Id.)  It is unclear from the record why this document was not provided for over 2.5 months after the issuance date listed on the document.  The Court need not resolve this issue to decide this emergency motion.

[3] Though Petitioner states in her declaration states that she has "never applied for asylum, never requested asylum, and never consented to be placed into any asylum-only or asylum-related proceedings" (Petr. Decl. ¶ 4), this appears inconsistent with the VWP Notice of Intent document signed and dated by petitioner (ECF No. 13-3 at 3).  The Court need not resolve this factual dispute to decide this emergency motion.

[4] Though Deportation Officer Cruz states in his declaration that "Petitioner has no other pending applications for relief" (Cruz Decl. ¶ 8), other documents submitted by respondents indicate petitioner has a Form I-130 petition pending (ECF No. 13-2 at 3).  The Court need not resolve this issue to decide this emergency motion.

555 U.S. 7, 22 (2008) (citation omitted).  The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction.  Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001).  To obtain either form of injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) the balance of equities tips in favor of the moving party; and (4) an injunction is in the public interest.  Winter, 555 U.S. at 20.

## V. DISCUSSION

Though the petition and briefing are confusing, petitioner is ultimately challenging her detention without a hearing or bond as a due process violation.  Petr. TRO Memo. at 14 (ECF No. 2 at 8); Petr. Reply at 5.

**A. Proper Respondents**

The government moves to strike and dismiss all improperly named respondents, but does not identify which officer has custody of petitioner and which respondents should be dismissed.  Resp. Opp'n at 1 n.1.  In addition to the Warden at the Mesa Verde ICE Processing Center, the habeas petition names three other respondents:  ICE Field Office Director, Secretary of Homeland Security, and the United States Attorney General.  (ECF No. 1.)  "[L]ongstanding practice confirms that in habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held . . . ."  Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004). The Ninth Circuit has "affirm[ed] the application of the immediate custodian and district of confinement rules to core habeas petitions filed pursuant to 28 U.S.C. § 2241, including those filed by immigrant detainees."  Doe v. Garland, 109 F.4th 1188, 1199 (9th Cir. 2024).

The Court notes that petitioner has been detained at different facilities, which likely explains why the petition initially named the Warden for a different facility and other respondents.  Because petitioner is currently detained at the California City Detention Facility, Cruz Decl. ¶ 7, the Warden or Facility Administrator at the California City Detention Facility (Christopher Chestnut) is the proper respondent.  Accordingly, Christopher Chestnut is

substituted as respondent in this action for Moises Becerra, Warden at the Mesa Verde ICE Processing Center. At this time, the Court declines to dismiss the other named respondents until additional information is provided by the government to confirm which respondent has custody of petitioner and is the proper respondent.

### B. Likelihood of Success on the Merits

The Court finds petitioner has established a likelihood of success on the merits of her due process challenge to her detention. As a result, the Court does not address petitioner's other claims.[5]

#### 1. Detention Authority

The government argues that petitioner is lawfully detained pursuant to 8 U.S.C. § 1187(c)(2)(E) because she is a Visa Waiver Program violator. See Resp. Opp'n. The Visa Waiver Program, 8 U.S.C. § 1187, permits noncitizens from certain countries to enter the United States for ninety days without a visa. In exchange, noncitizens admitted under this program are limited in how they challenge their removal. They may only challenge their removal upon an application for asylum, withholding of removal, or relief under the Convention Against Torture. 8 U.S.C. § 1187(b). If a Visa Waiver Program participant makes such a challenge, they are granted what is referred to as "asylum-only" hearings to determine their removability, and if such relief is denied, the participant can be removed without further process. 8 C.F.R. § 217.4(a)(1).

The basis for the government's asserted detention authority is § 1187(c)(2)(E), which provides:

> The government of the country accepts for repatriation any citizen, former citizen, or national of the country against whom a final executable order of removal is issued not later than three weeks after the issuance of the final order of removal. Nothing in this subparagraph creates any duty for the United States or any right for any alien with respect to removal or release. Nothing in this subparagraph gives rise to any cause of action or claim under this

---

[5] In her habeas petition, petitioner raises five claims for relief: (1) due process violation based on her detention; (2) intentional interference with the right to counsel; (3) coercion and invalid process; (4) excessive force; and (5) deliberate indifference to a serious medical need. The Court focuses its analysis on the first claim. The Court also notes that it appears the petition may raise claims that are not properly brought in a habeas petition, which will be addressed when the petition on the merits is evaluated.

>paragraph or any other law against any official of the United States or of any State to compel the release, removal, or consideration for release or removal of any alien.

The only authority cited by the government for detention authority under § 1187(c)(2)(E) is *Matter of A.W.*, 25 I&N Dec. 45 (BIA 2009). Resp. Opp'n at 3-4. The other cases cited by the government are related to other aspects of the Visa Waiver Program, not detention authority. See id.

The government fails to acknowledge, however, that most federal courts that have directly addressed whether a noncitizen who has violated the Visa Waiver Program can be detained pursuant to § 1187(c)(2)(E) have held that § 1187(c)(2)(E) is not a valid basis for detention.[6] See Molina v. Soto, 2025 WL 3281820, at *2-3 (D. N.J. Nov. 25, 2025) (granting petition and directing respondents to provide petitioner with a bond hearing); Romance v. Warden York Cnty. Prison, 2020 WL 6054933, at *4 (M.D. Pa. July 28, 2020), report and recommendation adopted, 2020 WL 6047594 (M.D. Pa. Oct. 13, 2020); Sutaj v. Rodriguez, 2017 WL 66386, at *5 (D. N.J. Jan. 5, 2017); Neziri v. Johnson, 187 F. Supp. 3d 211, 213 (D. Mass. 2016) ("The BIA offers no explanation, however, as to why the Secretary of Homeland Security cannot delegate any [bond-setting] authority to the Immigration Judge under 8 U.S.C. § 1226(a) or where in 8 U.S.C. § 1187(c)(2)(E) the BIA finds the Secretary of Homeland Security's authority to detain aliens."). As the district court in Molina recently explained:

>The text of § 1187(c)(2)(E) says nothing about DHS's authority to arrest and detain a person who has overstayed under the VWP. On the other hand, the text of § 1226(a) specifically provides for arrest and detention of a noncitizen "pending a decision on whether the [noncitizen] is to be removed from the United States" and permits the Attorney General to release the noncitizen on bond. Here, Petitioner was arrested and detained on October 8, 2025, pending a determination of his removal.
>
>This Court agrees with those courts who have drawn the same conclusion, that "the VWP does not have its own detention provision,

---

[6] Another court in this district assumed arguendo, without analyzing or holding, that Matter of A.W. correctly interpreted § 1187. See Cummins v. Becerra, 2025 WL 3724525, at *4 (E.D. Cal. Dec. 23, 2025). Because this Court follow the majority approach and holds that § 1187(c)(2)(E) does not authorize detention here, the approach taken in Cummins is not followed here.

> and the detention of an alien ... must instead arise from one of the other statutory provisions expressly covering aliens subject to detention during their removal proceedings." *Gjergj G. v. Edwards*, No. 19-5059, 2019 WL 1254561, at *2 (D.N.J. Mar. 18, 2019); *Romance v. Warden York Cnty. Prison*, No. 20-760, 2020 WL 6054933, at *4 (M.D. Pa. July 28, 2020), *report and recommendation adopted*, No. 20-760, 2020 WL 6047594 (M.D. Pa. Oct. 13, 2020) (acknowledging that the petitioner's detention did not fit neatly into "any of the normal detention categories" but determining § 1226(a) applied because otherwise the petitioner would receive a windfall for overstaying the VWP, which does not contain a detention provision.)

Molina, 2025 WL 3281820, at *3.

"[C]ourts must exercise independent judgment in determining the meaning of statutory provisions." Loper Bright Enters. v. Raimondo, 603 U.S. 369, 394 (2024). This Court agrees with the reasoning of the district courts above and also holds that 8 U.S.C. § 1187(c)(2)(E) is not a valid basis for detention of petitioner for her violation of the Visa Waiver Program, and holds that petitioner is detained pursuant to § 1226(a). The statute governing the Visa Waiver Program, 8 U.S.C. § 1187 does not address detention of noncitizens who violate the VWP, and the specific section relied upon by the government, § 1187(c)(2)(E), does not refer to detention at all. "As this Court has determined that § 1187(c)(2)(E) does not provide detention authority, the only statute which could provide for detention authority over Petitioner while her removal proceedings are pending is 8 U.S.C. § 1226." Szentkiralyi, 2017 WL 3477739, at *5. Section 1226(a) expressly provides for detention before a final removal order. In addition, respondents do not argue that petitioner is detained pursuant to § 1225, the statute for noncitizens seeking admission; or § 1226(c), the statute for noncitizens convicted of certain offenses; or § 1231, the statute that applies to noncitizens subject to a final order of removal. See Resp. Opp'n.[7] The Court therefore concludes that petitioner is detained pursuant to § 1226(a).

///

---

[7] While it is undisputed that petitioner was arrested, respondents do not argue that petitioner was convicted of any crime, let alone the battery/domestic violence basis for her September 2025 arrest. See Resp. Opp'n. The Court notes that in cases where the government asserts the noncitizen petitioner has committed crimes, triggering § 1226(c), the government has submitted documentation of the noncitizen's criminal record. The government submitted no such records here.

### 2. *Due Process*

Respondents' asserted compliance with the statutes such as § 1187(c)(2)(E) does not demonstrate they have satisfied the requirements of the Due Process Clause, "which of course constitute the supreme law of the land[.]" Tot v. United States, 319 U.S. 463, 472 (1943) (Black, J., concurring). As explained below, petitioner's present detention likely violates his due process rights under the Fifth Amendment.

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Foucha v. Louisiana, 504 U.S. 71, 80 (1992). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

The Court analyzes petitioner's due process claim "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)). "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary." Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690). Thus, petitioner has a protected liberty interest under the Due Process Clause.

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution. The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez, 872 F.3d at 993 (applying Mathews factors in immigration detention context). In applying the Mathews test to a procedural due process claim to a detention under 8 U.S.C. § 1226, the Ninth Circuit explained that "Mathews remains a flexible test that can and must

9

account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted). Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. Mathews, 424 U.S. at 335.

First, petitioner has a private interest in remaining free from detention. "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.")); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690. Petitioner has been living in the United States for almost 24 years since July 2001. She has five United States citizen children, four of whom are minors, and she is the primary caregiver for her children. Petr. Decl. ¶¶ 2, 3. Besides her September 2025 arrest for which petitioner was not convicted, the record before the court indicates that petitioner does not have a criminal record.

Next, the Court turns to the second Mathews factor, the risk of erroneous deprivation to petitioner, and finds this factor weighs in petitioner's favor. "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Respondents do not contend that petitioner is or was a flight risk or a danger to the community. Even if respondents believed they had a proper reason to detain petitioner, such decision on their part would warrant a pre-detention hearing rather than automatic detention. "That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." E.A. T.-B. v.

1  Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025).  Here, petitioner has been detained
2  since approximately September 15, 2025 (ECF No. 13-2 at 1), without being given an
3  individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the
4  community.  No neutral arbiter under 8 U.S.C. § 1226 has determined whether petitioner is a
5  flight risk or a danger to the community.

6       Finally, with regard to the third Mathews factor, this Court recognizes that the government
7  has an interest in enforcing immigration laws, but respondents' interest in detaining petitioner
8  without a hearing is "low."  Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F.
9  Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025)  Detention hearings in immigration courts are
10 routine, and impose a "minimal cost."  Doe, 787 F. Supp. 3d at 1094.  In addition, here, the
11 government's interest is even lower because petitioner has been in the United States for over 24
12 years, she has no criminal record, and as of December 30, 2025, the government has not even
13 taken the steps it has identified, such as filing an I-863 Notice of Referral for asylum only
14 proceedings though petitioner has been detained for 3.5 months.  See Cruz Decl. ¶ 8 ("As of
15 December 30, 2025, ICE intends on filing an I-863…") (emphasis added).

16      Overall, balancing these factors, this Court finds that the Mathews factors weigh in favor
17 of finding petitioner is entitled to a bond hearing, and petitioner should have been provided such a
18 hearing before she was detained.  "An essential principle of due process is that a deprivation of
19 life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the
20 nature of the case."  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal
21 quotation marks and citation omitted) (emphasis added).

22     **C.  Irreparable Harm**

23      The second preliminary injunction factor requires petitioner to demonstrate that she "is
24 likely to suffer irreparable harm in the absence of preliminary relief."  Winter, 555 U.S. at 20.  "It
25 is well established that the deprivation of constitutional rights 'unquestionably constitutes
26 irreparable injury.'"  Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012); Baird v. Bonta, 81
27 F.4th 1036, 1040 (9th Cir. 2023) (Where a plaintiff alleges a constitutional violation and "shows
28 he is likely to prevail on the merits, that showing usually demonstrates he is suffering irreparable

harm no matter how brief the violation."). "As other courts that have faced this issue have explained, the violation of petitioner's statutory rights causes 'immediate and irreparable injury.'" Lepe, 2025 WL 2716910, at *9 (citations omitted). Here, in addition to the deprivation of her physical freedom, petitioner is a mother with five children, the primary caregiver to her four minor children, and petitioner states that she is a domestic violence victim. The Court concludes petitioner is likely to suffer irreparable harm in absence of preliminary relief.

### D. Balance of Hardships and Public Interest

Finally, the Court turns to the last two Winter factors, which merge when the government is the nonmoving party. Nken v. Holder, 556 U.S. 418, 435 (2009); Baird, 81 F.4th at 1040 (internal citations omitted). Though the government has an interest in enforcing immigration laws, the issue here is whether the government can detain the petitioner without a bond hearing. Respondents "cannot reasonably assert that [they are] harmed in any legally cognizable sense by being enjoined from constitutional violations." Zepeda v. U.S. I.N.S., 753 F.2d 719, 727 (9th Cir. 1983); see also Rodriguez v. Robbins, 715 F. 3d 1127, 1145 (9th Cir. 2013) ("[The government] cannot suffer harm from an injunction that merely ends an unlawful practice[.]"). Further, the public has a strong interest in requiring respondents to follow the law and comply with due process. In addition, as recognized by the Ninth Circuit, "costs to the public of immigration detention are staggering[.]" Hernandez, 872 F.3d at 995; see also Index Newspapers LLC v. U.S. Marshals Serv., 977 F.3d 817, 838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights."). Petitioner faces irreparable harm from the deprivation of her physical freedom and from being separated from her four minor children for whom she is the primary caregiver. Thus, the Court finds that the balance of hardships and the public interest weigh in favor of granting petitioner injunctive relief.

### VI. BOND

The Court exercises its discretion under Federal Rule of Civil Procedure 65(c) to dispense with the filing of bond. "[T]here is no realistic likelihood of harm to the [respondents] from enjoining [their] conduct." Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003); see Diaz v. Brewer, 656 F.3d 1008, 1015 (9th Cir. 2011). Therefore, no security is needed to ensure that

respondents will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Courts regularly waive security in cases like this one. See, e.g., Zakzouk v. Becerra, 2025 WL 2899220, at *8 (N.D. Cal. Oct. 10, 2025).

## VII. CONCLUSION AND ORDERS

Accordingly, IT IS HEREBY ORDERED that:

1. Christopher Chestnut is substituted as respondent in this action for currently named Moises Becerra, Warden at the Mesa Verde ICE Processing Center. At this time, the Court declines to dismiss the other named respondents until additional information is provided by the government.
2. Petitioner's motion for temporary restraining order (ECF No. 2) is granted.
3. Petitioner Sandra Quispe shall be released immediately from respondents' custody.
4. Respondents are enjoined and restrained from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.
5. To ensure this Court's jurisdiction to resolve the pending habeas petition, respondents shall not transfer petitioner out of this judicial district, pending further order of the court. See 28 U.S.C. § 1651(a) (establishing the All Writs Act which empowers the federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions...."); see also F.T.C. v. Dean Foods Co., 384 U.S. 597, 604 (1966) (emphasizing that federal courts have the power to "to preserve the court's jurisdiction or maintain the status quo by injunction pending review of an agency's action").
6. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.
7. Within seven days of this order, the parties are ordered to file a Joint Status Report as to: (a) petitioner's status; (b) whether the case should proceed to a motion for preliminary injunction or addressing the habeas petition on the merits, which can be done on an expedited basis; and (c) a proposed briefing and hearing schedule for either a motion for preliminary injunction or merits.

Dated: December 31, 2025

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

csk/Quis2002.imm.pi/2

14