UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA QUISPE, | No. 1:25-cv-2002 CSK |
| Petitioner, | |
| v. | ORDER |
| CHRISTOPHER CHESTNUT, Warden of the California City Detention Facility, et al., | |
| Respondent. | |

Petitioner Sandra Quispe, a citizen of Argentina, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging her detention.[1]  Petitioner was admitted to the United States on July 13, 2001 as a Visitor for Pleasure under a Visa Waiver Program (VWP) for a temporary period not to exceed October 12, 2001.  Petitioner remained in the United States beyond this date without authorization.  Petitioner was initially detained by U.S. Immigration and Customs Enforcement (ICE) officials on September 14, 2025 after ICE officials lodged an Immigration Detainer against petitioner.  On December 31, 2025, the Court granted petitioner's motion for a temporary restraining order and ordered petitioner released.  (ECF No. 15.)  Petitioner was subsequently released from ICE custody.  (ECF No. 16.)  For the reasons that

---

[1] Petitioner is represented by counsel and paid the filing fee.  The parties consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1).  (ECF No. 11.)

follow, the Court GRANTS the habeas petition.

I.  **BACKGROUND**

The factual and procedural background previously presented in the Court's December 31, 2025 order are incorporated herein.  (See ECF No. 15.)  This section focuses on providing updates since the December 31, 2025 order.  After the Court's order, petitioner was released from ICE custody.  (ECF No. 16.)  The parties subsequently informed the Court that additional briefing was not needed to decide the petition on the merits and requested a ruling on the merits.  (ECF Nos. 16, 17.)

II. **LEGAL STANDARDS**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

III. **DISCUSSION**

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690 (holding that 8 U.S.C. § 1231(a)(6) does not authorize indefinite detention).  The petition raises the following six claims: (1) Fifth Amendment due process violation based on her detention; (2) intentional interference with the right to counsel; (3) "coercion and invalid process"; (4) excessive force; and (5) deliberate indifference to serious medical needs; and (6) "evasion of judicial review."  (ECF No. 1 at 5-6.)

///

**A.     Due Process Claim (Claim One)**

Petitioner challenges her detention without a hearing or bond as a due process violation.

*1.     Detention Authority*

The government argues that petitioner is lawfully detained pursuant to 8 U.S.C. § 1187(c)(2)(E) because she is a Visa Waiver Program violator. See Resp. Opp'n. The Visa Waiver Program, 8 U.S.C. § 1187, permits noncitizens from certain countries to enter the United States for ninety days without a visa. In exchange, noncitizens admitted under this program are limited in how they challenge their removal. They may only challenge their removal upon an application for asylum, withholding of removal, or relief under the Convention Against Torture. 8 U.S.C. § 1187(b). If a Visa Waiver Program participant makes such a challenge, they are granted what is referred to as "asylum-only" hearings to determine their removability, and if such relief is denied, the participant can be removed without further process. 8 C.F.R. § 217.4(a)(1).

The basis for the government's asserted detention authority is § 1187(c)(2)(E), which provides:

> The government of the country accepts for repatriation any citizen, former citizen, or national of the country against whom a final executable order of removal is issued not later than three weeks after the issuance of the final order of removal. Nothing in this subparagraph creates any duty for the United States or any right for any alien with respect to removal or release. Nothing in this subparagraph gives rise to any cause of action or claim under this paragraph or any other law against any official of the United States or of any State to compel the release, removal, or consideration for release or removal of any alien.

The only authority cited by the government for detention authority under § 1187(c)(2)(E) is *Matter of A.W.*, 25 I&N Dec. 45 (BIA 2009). Resp. Opp'n at 3-4 (ECF No. 13). The other cases cited by the government are related to other aspects of the Visa Waiver Program, not detention authority. See id.

The government fails to acknowledge, however, that most federal courts that have directly addressed whether a noncitizen who has violated the Visa Waiver Program can be detained

/ / /

/ / /

3

pursuant to § 1187(c)(2)(E) have held that § 1187(c)(2)(E) is not a valid basis for detention.[2] See Molina v. Soto, 2025 WL 3281820, at *2-3 (D. N.J. Nov. 25, 2025) (granting petition and directing respondents to provide petitioner with a bond hearing); Romance v. Warden York Cnty. Prison, 2020 WL 6054933, at *4 (M.D. Pa. July 28, 2020), report and recommendation adopted, 2020 WL 6047594 (M.D. Pa. Oct. 13, 2020); Sutaj v. Rodriguez, 2017 WL 66386, at *5 (D. N.J. Jan. 5, 2017); Neziri v. Johnson, 187 F. Supp. 3d 211, 213 (D. Mass. 2016) ("The BIA offers no explanation, however, as to why the Secretary of Homeland Security cannot delegate any [bond-setting] authority to the Immigration Judge under 8 U.S.C. § 1226(a) or where in 8 U.S.C. § 1187(c)(2)(E) the BIA finds the Secretary of Homeland Security's authority to detain aliens.").

As the district court in Molina recently explained:

> The text of § 1187(c)(2)(E) says nothing about DHS's authority to arrest and detain a person who has overstayed under the VWP. On the other hand, the text of § 1226(a) specifically provides for arrest and detention of a noncitizen "pending a decision on whether the [noncitizen] is to be removed from the United States" and permits the Attorney General to release the noncitizen on bond. Here, Petitioner was arrested and detained on October 8, 2025, pending a determination of his removal.
>
> This Court agrees with those courts who have drawn the same conclusion, that "the VWP does not have its own detention provision, and the detention of an alien ... must instead arise from one of the other statutory provisions expressly covering aliens subject to detention during their removal proceedings." *Gjergj G. v. Edwards*, No. 19-5059, 2019 WL 1254561, at *2 (D.N.J. Mar. 18, 2019); *Romance v. Warden York Cnty. Prison*, No. 20-760, 2020 WL 6054933, at *4 (M.D. Pa. July 28, 2020), *report and recommendation adopted*, No. 20-760, 2020 WL 6047594 (M.D. Pa. Oct. 13, 2020) (acknowledging that the petitioner's detention did not fit neatly into "any of the normal detention categories" but determining § 1226(a) applied because otherwise the petitioner would receive a windfall for overstaying the VWP, which does not contain a detention provision.)

Molina, 2025 WL 3281820, at *3.

"[C]ourts must exercise independent judgment in determining the meaning of statutory

---

[2] Another court in this district assumed arguendo, without analyzing or holding, that Matter of A.W. correctly interpreted § 1187. See Cummins v. Becerra, 2025 WL 3724525, at *4 (E.D. Cal. Dec. 23, 2025). Because this Court follow the majority approach and holds that § 1187(c)(2)(E) does not authorize detention here, the approach taken in Cummins is not followed here.

provisions." Loper Bright Enters. v. Raimondo, 603 U.S. 369, 394 (2024). This Court agrees with the reasoning of the district courts above and also holds that 8 U.S.C. § 1187(c)(2)(E) is not a valid basis for detention of petitioner for her violation of the Visa Waiver Program, and holds that petitioner is detained pursuant to § 1226(a). The statute governing the Visa Waiver Program, 8 U.S.C. § 1187 does not address detention of noncitizens who violate the VWP, and the specific section relied upon by the government, § 1187(c)(2)(E), does not refer to detention at all. "As this Court has determined that § 1187(c)(2)(E) does not provide detention authority, the only statute which could provide for detention authority over Petitioner while her removal proceedings are pending is 8 U.S.C. § 1226." Szentkiralyi, 2017 WL 3477739, at *5. Section 1226(a) expressly provides for detention before a final removal order. In addition, respondents do not argue that petitioner is detained pursuant to § 1225, the statute for noncitizens seeking admission; or § 1226(c), the statute for noncitizens convicted of certain offenses; or § 1231, the statute that applies to noncitizens subject to a final order of removal. See Resp. Opp'n.[3] The Court therefore concludes that petitioner is detained pursuant to § 1226(a).

### 2.   *Due Process*

Respondents' asserted compliance with the statutes such as § 1187(c)(2)(E) does not demonstrate they have satisfied the requirements of the Due Process Clause, "which of course constitute the supreme law of the land[.]" Tot v. United States, 319 U.S. 463, 472 (1943) (Black, J., concurring). As explained below, petitioner's detention violated her due process rights under the Fifth Amendment.

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Foucha v. Louisiana, 504 U.S. 71, 80 (1992). "[T]he Due Process Clause

---

[3] While it is undisputed that petitioner was arrested, respondents do not argue that petitioner was convicted of any crime, let alone the battery/domestic violence basis for her September 2025 arrest. See Resp. Opp'n. The Court notes that in cases where the government asserts the noncitizen petitioner has committed crimes, triggering § 1226(c), the government has submitted documentation of the noncitizen's criminal record. The government submitted no such records here.

applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

The Court analyzes petitioner's due process claim "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)). "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary." Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690). Thus, petitioner has a protected liberty interest under the Due Process Clause.

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution. The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez, 872 F.3d at 993 (applying Mathews factors in immigration detention context). In applying the Mathews test to a procedural due process claim to a detention under 8 U.S.C. § 1226, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted). Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest. Mathews, 424 U.S. at 335.

First, petitioner has a private interest in remaining free from detention. "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.")); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process.").

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690. Petitioner has been living in the United States for almost 24 years since July 2001. She has five United States citizen children, four of whom are minors, and she is the primary caregiver for her children. Petr. Decl. ¶¶ 2, 3 (ECF No. 14 at 8-9). Besides her September 2025 arrest for which petitioner was not convicted, the record before the court indicates that petitioner does not have a criminal record.

Next, the Court turns to the second Mathews factor, the risk of erroneous deprivation to petitioner, and finds this factor weighs in petitioner's favor. "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Respondents do not contend that petitioner is or was a flight risk or a danger to the community. Even if respondents believed they had a proper reason to detain petitioner, such decision on their part would warrant a pre-detention hearing rather than automatic detention. "That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025). Here, petitioner was detained on approximately September 15, 2025 (ECF No. 13-2 at 1), without being given an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community. No neutral arbiter under 8 U.S.C. § 1226 has determined whether petitioner is a flight risk or a danger to the community.

Finally, with regard to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondents' interest in detaining petitioner without a hearing is "low." Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025) Detention hearings in immigration courts are routine, and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094. In addition, here, the

government's interest is even lower because petitioner has been in the United States for over 24 years, she has no criminal record, and as of December 30, 2025, the government has not even taken the steps it has identified, such as filing an I-863 Notice of Referral for asylum only proceedings though petitioner has been detained for 3.5 months.  See Patrick J. Cruz Decl. ¶ 8 ("As of December 30, 2025, ICE intends on filing an I-863…") (emphasis added) (ECF No. 13-1 at 2).

Overall, balancing these factors, this Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing, and petitioner should have been provided such a hearing before she was detained.  "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case."  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added).  In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a predeprivation hearing before their parole can be revoked.  Morrissey v. Brewer, 408 U.S. 471, 480-86 (1972).  "Numerous district courts have held that these principles extend to the context of immigration detention."  F.M.V. v. Wofford, 2025 WL 3083934, at *6 (E.D. Cal. Nov. 4, 2025) (collecting cases).  Respondents point to no reasons a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process."  Guillermo M. R. v. Kaiser, 791 F. Supp. 3d at 1036.  Accordingly, the Court finds that petitioner is entitled to relief on her due process claims.

### B. Petitioner's Other Claims

In light of the Court's ruling that petitioner's requested relief be granted on her due process claim, petitioner's remaining claims (claims two through six) need not be resolved.

### IV. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. The petition for writ of habeas corpus (ECF No. 1) is GRANTED.
2. Respondents are enjoined and restrained from re-detaining petitioner Sandra Quispe

8

1 | unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that her physical custody is legally justified.

3. The Clerk of the Court is directed to enter judgment in favor of petitioner and close this case

Dated:  March 9, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

csk/Quis2002.25.imm.merits